United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| In re E.G.A., a Minor. | ) | |
| | ) | |
| Jean-Christophe Albou, Petitioner, | ) | Civil Action No. 22-23128-Civ-Scola |
| | ) | |
| v. | ) | |
| | ) | |
| Ana-Maria Toro, Respondent. | ) | |

## Order Granting Ex Parte Application for Entry of Temporary Restraining Order

This matter is before the Court on Petitioner Jean-Christophe Albou's Verified Petition for Relief under the Hague Convention on the Civil Aspects of International Child Abduction and Petition for Immediate Issuance of Show Cause Order. (ECF No. 1.) The Petitioner, Mr. Albou, moves, *ex parte*, for entry of a temporary restraining order against the Respondent, Ms. Toro, pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (the "Hague Convention"). The Court has carefully considered the Petition, the record, and the governing law. For the reasons stated below, the Court **grants** the Plaintiff's *ex parte* Petition for a Temporary Restraining Order. (**ECF No. 1**.)

### 1. Background

The Court finds the following facts and allegations, based upon its review of the Petitioner's pleadings and attachments, support the issuance of the Temporary Restraining Order ("TRO"):

1.      The Petitioner, Jean-Christophe Albou, initiated this action by filing a Verified Petition (the "Verified Petition") pursuant to the Hague Convention. (Pet., ECF No. 1.)

2.      The substance of the Petitioner's claim is that his child, five-year-old E.G.A (the "Child"), was removed from France and retained by the Respondent, Ana-Maria Toro, the Child's mother, in violation of an agreement entered into by the Petitioner and the Respondent. The Petitioner, the Respondent, and Child are citizens of France. The Respondent is also a citizen of Colombia. (Pet. ¶¶ 1-5.)

3.      In July of 2020, while still in France, the Respondent began an online relationship with an American who sent her an engagement ring and a credit card in September of 2020. In August of 2020, the Respondent

discontinued living with the Petitioner and the Petitioner cared for Child. (Pet. ¶¶ 8-9.)

     4.    In October of 2020, the Respondent traveled to Colombia and then Mexico using her Colombian passport to meet with her American fiancé. The Respondent did not return to France until mid-December of 2020. (Pet. ¶ 10.)

     5.    On December 31, 2020, the Respondent once again left France, this time to travel to Miami, Florida, and did not return until mid-February of 2021. During these absences, the Petitioner cared for the Child. (Pet. ¶ 11.)

     6.    In January of 2021, the Civil Solidarity Pact ("PACS") between the Respondent and Petitioner, which grants legal status to non-married couples in France, was effectively broken. Accordingly, at the end of January, the Petitioner initiated legal proceedings in the French Family Court to establish timesharing with the Child and to prevent the Respondent from removing the Child from the French territory. (Pet. ¶ 12.)

     7.    In mid-February of 2021, the Respondent returned to France, established separate housing, and began caring for the Child. (Pet. ¶ 13.)

     8.    In April of 2021, with the assistance of an attorney, the Respondent and the Petitioner agreed to terms for child sharing and joint custody of the Child which would be submitted for approval to a family court judge in Paris. In May of 2021, at a hearing before the family court judge in Paris, the joint custody agreement was approved by the French tribunal. The Petitioner agreed that the primary residence of the child would be with the Respondent, but the Petitioner would have liberal daily visitation rights with the child in Paris and exercise joint custody over the Child. This agreement was the subject of the judgment of the French tribunal (the "French Custody Judgment"), setting forth the daily time-sharing details. (Pet. ¶ 14, Ex. A.)

     9.    In June of 2021, the Respondent announced that she was pregnant by her American fiancé. (Pet. ¶ 15.)

     10.    On December 16, 2021, the Respondent, the Petitioner, and the Child took a Christmas vacation to Miami, Florida, traveling together. All three had airline tickets returning to France on January 4, 2022, when school would resume for the Child. The Child is autistic and attends special classes with a shadow employee who supervises all his activities in school. Prior to the scheduled return, the Respondent announced that she would not travel back to France with the Child due to renewed Covid-19 outbreaks in Paris and fears over herself or Child contracting Covid. However, the Respondent promised to return no later than February, once the Covid outbreak had diminished. Accordingly, the Petitioner returned to France with the expectation that the Respondent and the Child would soon follow. (Pet. ¶ 16.)

11.     In February of 2022, the Respondent claimed that she was having a difficult pregnancy and had obtained a medical certificate (which the Petitioner now alleges was fraudulent) stating that, due to her medical condition, she should give birth in the United States rather than risk return travel to France.  In March of 2022, the Respondent gave birth to a son in Miami, Florida. (Pet. ¶ 17.)

12.     On March 10, 2022, the Respondent advised the Petitioner that because she could not travel and the Child's visa was expiring, it was necessary to obtain an immigration extension and that the Petitioner would have to sign an affidavit authorizing the Child to remain in the U.S. territory. Given these circumstances, the Petitioner agreed, but only on the condition, as the affidavit sets forth, that the Child be returned to France no later than May 15, 2022. Unknown to the Petitioner at the time, the Respondent was married to her American fiancé in April of 2022. (Pet. ¶ 18, Ex. B.)

13.     In May of 2022, notwithstanding her promise to return the Child to France by May 15, 2022, the Respondent announced that she was applying to be a U.S. permanent resident along with the Child, would not return to France, and would retain the Child with her in Miami, Florida. In July of 2022, the Petitioner flew to Miami and attempted to reason with the Respondent and convince her to allow the Child to return with him to France. The Respondent refused. (Pet. ¶ 19.)

14.     The Petitioner returned again to Miami in September of 2022 to see the Child and attempted to reason with the Respondent to allow for the Child to return to France with the Petitioner. During this visit, the Respondent allowed the Petitioner to take the Child to the Petitioner's rented home in Aventura, Florida. While the Child was with the Petitioner in his rented home, however, the Respondent abruptly and violently entered the Petitioner's home to remove the Child. The Aventura police were summoned, but no arrests were made. Since this incident, the Respondent has refused to allow the Petitioner any further contact with the Child. (Pet. ¶ 20.)

## 2. Legal Standard

In the Eleventh Circuit, the standard for granting a motion for a temporary restraining order is the same as that required for granting a preliminary injunction. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005). A party seeking to obtain a preliminary injunction must demonstrate:

(1) a substantial likelihood of success on the merits;

(2) a substantial threat of irreparable injury if the injunction were not granted;

(3) that the threatened injury to the plaintiff outweighs the harm an injunction may cause the defendant; and,

(4) that granting the injunction would not disserve the public interest.

*Id.*; *see also Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

### 3. Analysis

To establish wrongful removal under the [Hague] Convention, [petitioners] must show that they had "rights of custody" and that they were exercising those rights when [a respondent] removed the children [from the home state]." *Hanley v. Roy*, 485 F.3d 641, 645 (11th Cir. 2007). To succeed on a claim of wrongful removal, a petitioner must demonstrate "by a preponderance of the evidence that: (1) the child has been removed or retained in violation of the petitioner's 'rights of custody' (i.e., 'rights relating to the care of the person of the child ... either jointly or alone'); and (2) 'at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.'" *Id.* (citations omitted). "The existence of 'rights of custody' are determined by the law of the country in which the child habitually resides at the time of removal." *Id.*

Having reviewed the Verified Petition, its exhibits, and the entire record currently before the Court, the Court concludes the following: (1) the Petitioner has shown a likelihood of success on the merits because the Petitioner has established rights of custody over the Child under

French law, and the exercise of those rights at the time the Respondent removed the Child from France;

(2) the Petitioner has made a showing of irreparable harm, because the Child is currently in the Respondent's custody outside of France, with no plan of return to France;

(3) the balance of hardships tips in the Petitioner's favor, as an equitable basis for granting relief exists under the Hague Convention; and

(4) a temporary restraining order is in the public interest because the relief sought would further the goals of the Hague Convention that rights of custody and access under the law of one contracting state will be effectively respected in other contracting states. *See Schiavo*, 403 F.3d at 1231; *Hanley*, 485 F.3d at 645.

Further, the Court finds that there is sufficient reason why notice should not be given to the Respondent, as it is likely that absent legal restraint, the Respondent may attempt to abscond with the Child from this District. (*See* Pet. ¶¶ 16-20.)

Upon review of the Petitioner's verified petition and supporting evidentiary submissions, the Court hereby **ORDERS AND ADJUDGES** that the Petitioner's *ex parte* application for temporary restraining order (**ECF No. 1**) is **granted**, under the terms set forth below:

(1)     The Respondent, Ana-Maria Toro, shall not leave the Southern District of Florida; shall maintain her present address at 19626 E. Country Club Drive, Aventura, Florida, 33180; and shall surrender all of the Child's travel documents to the Clerk of court pending trial of the above styled case.

(2)     No person acting in concert or participating with the Respondent shall take any action to remove the Child from the jurisdiction of this Court pending a determination on the merits of the Verified Petition.

(3)     The Respondent, Ana-Maria Toro, shall allow the Petitioner, Jean-Christophe Albou, to engage in the same child sharing and decision-making as is authorized by the French tribunal pending trial of this cause, which seeks the return of the Child to his habitual residence in France.

(4)     The Respondent is cautioned that violation of this temporary restraining order may be treated as contempt of court, may be punishable as a federal criminal offense, and could further result in the issuance of a warrant requiring taking of custody of the Child by the United States Marshals Service.

(5)     This Order shall go into effect immediately and shall remain in full force and effect for fourteen days from the date of entry, or until further order of the Court.

(6)     Federal Rule of Civil Procedure 65 states that a bond must be posted whenever the court issues a preliminary injunction. However, "the

amount of security required by the rule is a matter within the discretion of the trial court ... [, and] the court may elect to require no security at all." *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Svcs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (cleaned up). The Court determines that the Petitioner need not post a bond. The Petitioner is merely seeking a *temporary* order prohibiting the Respondent from removing the Child from the jurisdiction, requiring the Respondent to relinquish the Child's travel documents to the custody of the Court, and requiring an expedited hearing. The Petitioner is not seeking a permanent order removing the Respondent's custodial rights, nor is he seeking to permanently limit the Respondent's ability to travel. Therefore, the Court declines to require the Petitioner to post a bond.

(7)      The Petitioner shall serve copies of the Verified Petition for Relief under the Hague Convention on the Civil Aspects of International Child Abduction and Petition for Immediate Issuance of Show Cause Order, all exhibits thereto, and this Order, on the Respondent. The Petitioner shall file a notice of compliance with this provision and provide proof of service with the notice once service is made.

(8)      A hearing is set before this Court in the United States Courthouse located at the Wilkie D. Ferguson, Jr., U.S. Courthouse, 400 North Miami Avenue, Miami, Florida, 33128, Courtroom 12-3, on **October 6, 2022, at 8:30 A.M.**, at which time the Respondent or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same.

(9)      Any response or opposition to the Petitioner's motion must be filed and served on the Petitioner's counsel and filed with the Court by **October 4, 2022**. The above dates may be revised upon stipulation by all parties and approval of this Court.

**Done and ordered** at Miami, Florida, on September 28, 2022, at 6:30 p.m.

_____
Robert N. Scola, Jr.
United States District Judge